**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
Eastern Division**

ALPS PROPERTY & CASUALTY
INSURANCE COMPANY,
                                                    Case No. _____

       Plaintiff,

v.

BREDAHL AND ASSOCIATES, P.C.;
JEFF A. BREDAHL, ESQ.;
LEGACY STEEL BUILDING, INC.;
WANE ENGKJER; and
BRUCE ENGKJER,

       Defendants.

_____

## COMPLAINT
_____

Plaintiff ALPS Property & Casualty Insurance Company ("ALPS"), pursuant to 28 U.S.C. §§ 2201(a) and 2202 and Federal Rules of Civil Procedure 8(a) and 57, for its complaint against Defendants Bredahl and Associates, P.C. ("Bredahl Firm"), Jeff A. Bredahl ("Bredahl" and together with the Bredahl Firm, "Bredahl Defendants"), Legacy Steel Building, Inc. ("Legacy Steel"), Wane Engkjer ("W. Engkjer"), and Bruce Engkjer ("B. Engkjer" and together with Legacy and W. Engkjer, "Legacy Defendants")[1], alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     ALPS is an insurance company and corporation organized under the laws of the State of Montana with its principal place of business in the State of Montana; ALPS is a citizen of the State of Montana.

---

[1] ALPS will refer to the Bredahl Defendants and the Legacy Defendants collectively as "Defendants".

2.      The Bredahl Firm is a professional corporation formed under the laws of the State of North Dakota with its principal place of business in Fargo, North Dakota.

3.      Bredahl is an attorney licensed in the State of North Dakota and, upon information and belief, domiciled in and a citizen of the State of North Dakota.  Bredahl is, upon information and belief, the sole owner of the Bredahl Firm.

4.      Legacy Steel is a corporation formed and operated under the laws of the State of North Dakota with its principal place of business in Fargo, North Dakota; Legacy Steel is, upon information and belief, a citizen of the State of North Dakota.

5.      W. Engkjer is, upon information and belief, the President of Legacy Steel and a resident of the State of North Dakota; W. Engkjer is, upon information and belief, domiciled in and a citizen of the State of North Dakota.

6.      B. Engkjer is, upon information and belief, an independent contractor associated with Legacy Steel and a resident of the State of North Dakota; B. Engkjer is, upon information and belief, domiciled in and a citizen of the State of North Dakota.

7.      The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between ALPS and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims for relief occurred in this district.

## GENERAL ALLEGATIONS

### I.  Background – The Elite Suit and the Legacy Suit

9.      In this insurance coverage action, ALPS seeks a judgment declaring Lawyers Professional Liability Insurance Policy No. ALPS20836-1 issued by ALPS to the Bredahl Firm

for the policy period October 1, 2017 to October 1, 2018 ("Policy") does not afford coverage to the Bredahl Defendants with respect to the suit styled *Legacy Steel Building, Inc., et al. v. Bredahl, et al.*, Case No. 09-2019-CV-01164 (Dist. Ct. Cass Cty., N.D.) ("Legacy Suit").  A true and correct copy of the Policy is attached as Exhibit A.

10.     The Legacy Suit arises from the Bredahl Defendants' representation of the Legacy Defendants in the suit styled *Elite Inspection Services, Inc. v. Legacy Steel Building, Inc., et al.*, Civil Case No. 53-2015-CV-01235 (Dist. Ct. Williams Cty., N.D.) ("Elite Suit"). (April 8, 2019 Complaint in the Legacy Suit ("Legacy Complaint") ¶¶ 12-25.  A true and correct copy of the Legacy Complaint is attached as Exhibit B.).

**A. Elite Suit**

11.     On August 12, 2015, Elite Inspection Services, Inc. ("Elite") filed the Elite Suit, in which Elite alleged the Legacy Defendants breached a contract with Elite to construct a steel structure.  (August 12, 2015 Complaint in the Elite Suit ("Elite Complaint") ¶¶ 5, 7.  A true and correct copy of the Elite Complaint is attached as Exhibit C.).

12.     Elite alleged it incurred nearly $100,000.00 in additional construction costs and more than $500,000.00 in lost profits resulting from the Legacy Defendants' failure to perform its contract with Elite.  (Exhibit C ¶¶ 11-12).

13.     The Legacy Defendants, upon information and belief, initially engaged another attorney, Paul Oppegard, to represent them in the Elite Suit.

14.     In or around February or March 2016, upon information and belief, the Legacy Defendants changed counsel and engaged the Bredahl Defendants to represent them in the Elite Suit.  (*See* Exhibit B ¶ 12).

3

15.     On March 3, 2016, the court in the Elite Suit scheduled a two-day trial to begin March 13, 2017.  (March 3, 2016 Notice of Trial in the Elite Suit, a true and correct copy of which is attached as Exhibit D).  Bredahl received notice of the trial setting in the Elite Suit. (Exhibit D).

16.     On July 14, 2016, Elite filed a motion to compel the Legacy Defendants to respond to discovery requests Elite had served the Legacy Defendants on or around December 23, 2015.  (July 14, 2016 Motion to Compel and Brief in Support of Motion to Compel, Elite Suit ("July 2016 Motion to Compel").  A true and correct copy of the July 2016 Motion to Compel and Notice of the July 2016 Motion to Compel is attached as Exhibit E.).

17.     The Legacy Defendants did not respond to Elite's July 2016 Motion to Compel, and on August 10, 2016, the court granted Elite's motion.  (August 10, 2016 Order Re: Plaintiff's Motion to Compel Discovery, Elite Suit ("August 2016 Order").  A true and correct copy of the August 2016 Order is attached as Exhibit F.).

18.     In the August 2016 Order, the court ordered the Legacy Defendants to respond to Elite's December 2015 discovery requests, barred the Legacy Defendants from introducing any evidence at trial not disclosed to Elite in the discovery responses, and ordered the Legacy Defendants to pay Elite $1,500.00 in costs and fees associated with the July 2016 Motion to Compel.  (Exhibit F ¶¶ 6-8).

19.     On August 18, 2016, the Bredahl Defendants received a copy of the August 2016 Order in the Elite Suit.  (August 18, 2016 Notice of Entry of Order in the Elite Suit, a true and correct copy of which is attached as Exhibit G).

20.     Neither the Legacy Defendants nor their counsel, the Bredahl Defendants, upon information and belief, ever responded to the July 2016 Motion to Compel or Elite's discovery

4

requests, and never paid Elite the $1,500.00 in costs and fees ordered by the court. (*See* Exhibit F).

21.     The Legacy Defendants allege Bredahl never informed them of the discovery requests, Elite's July 2016 Motion to Compel, or the court's August 2016 Order. (November 1, 2017 Affidavit of Wane Engkjer in Support of Motion to Vacate Judgment and Stay Execution, Elite Suit ("November 2017 Engkjer Affidavit") ¶¶ 12, 14.  A true and correct copy of the November 2017 Engkjer Affidavit is attached as Exhibit H.).

22.     On March 10, 2017, the Friday before the Monday, March 13, 2017 trial in the Elite Suit was to begin, attorney Blake Hankey ("Hankey") filed an expedited motion on behalf of the Legacy Defendants to continue the trial date.  (March 10, 2017 Expedited Notice of Motion and Memorandum to Continue Trial Date, Elite Suit ("March 2017 Motion to Continue").  A true and correct copy of the March 2017 Motion to Continue is attached as Exhibit I.).

23.     The March 2017 Motion to Continue included affidavits from W. Engkjer and Bredahl and a March 21, 2016 letter from Bredahl to Legacy Steel's office manager, in which Bredahl allegedly advised the Legacy Defendants he could no longer represent them in the Elite Suit because of "substantial health issues".  (Exhibit I).

24.     The Legacy Defendants dispute receiving the March 21, 2016 letter from Bredahl and allege Bredahl fabricated the letter.  (November 1, 2017 Affidavit of Gary Smith in Support of Motion to Vacate Judgment and Stay Execution, Elite Suit ("November 2017 Smith Affidavit") ¶ 10.  A true and correct copy of the November 2017 Smith Affidavit is attached as Exhibit J.).

4834-5128-3107.2

25.     W. Engkjer admits executing the affidavit submitted with the March 2017 Motion to Continue in Bredahl's office on March 10, 2017, but alleges that is the first time he learned of the March 13, 2017 trial date or of any need to change counsel.  (Exhibit H ¶¶ 16-17).

26.     Trial in the Elite Suit proceeded on March 13, 2017.  Neither the Legacy Defendants, nor the Bredahl Defendants, nor any other counsel for the Legacy Defendants appeared at the trial.  (March 20, 2017 Order for Judgment Against Defendants, Elite Suit ("March 2017 Order") ¶ 1.  A true and correct copy of the March 2017 Order is attached as Exhibit K.  *See also* March 21, 2017 Judgment and Decree, Elite Suit ("March 2017 Judgment") ¶ 1.  A true and correct copy of the March 2017 Judgment is attached as Exhibit L.).

27.     At the March 13, 2017 trial in the Elite Suit, the court received evidence, heard arguments, and ruled in favor of Elite.  (Exhibit K ¶¶ 2-9; Exhibit L ¶ 2).  The court entered judgment against the Legacy Defendants, jointly and severally, in the amount of $1,035,538.81 and determined the corporate veil of Legacy Steel should be pierced, such that B. Engkjer and W. Engkjer must be held individually and personally liable for the entire judgment.  (Exhibit K ¶ 9; Exhibit L).

28.     On March 22, 2017, Elite served the Bredahl Defendants with a copy of the court's March 2017 Order and March 2017 Judgment.  (March 22, 2017 Certificate of Service Re: Notice of Entry of Orders and Judgment in the Elite Suit, a true and correct copy of which is attached as Exhibit M.).

29.     The Legacy Defendants allege they learned of the March 2017 Judgment in the Elite Suit only through Elite's attempts to execute on the judgment, not from the Bredahl Defendants.  (Exhibit H ¶ 22).

30.     The Legacy Defendants subsequently obtained new counsel and filed separate motions to vacate the March 2017 Judgment.  (*See* Exhibit H).  B. Engkjer filed his motion on October 13, 2017; W. Engkjer and Legacy Steel filed their motion on November 6, 2017. (*See id.*).

31.     On December 18, 2017, the court in the Elite Suit denied the Legacy Defendants' respective motions to vacate the March 2017 Judgment.  (December 18, 2017 Order Denying Defendants' Motions to Vacate Judgment, Elite Suit ("December 2017 Order").  A true and correct copy of the December 2017 Order is attached as Exhibit N.).

32.     In the December 2017 Order, the court determined: (a) "In a nutshell, the [Legacy] Defendants knew of the trial date and made a <u>willful, free, deliberate, and conscious decision not to attend</u>" (emphasis in original); and (2) "[T]he evidence of the [Legacy] Defendants' purported meritorious defenses should have been presented at trial.  However, even if the [Legacy] Defendants had appeared at trial, they were barred from submitting evidence" by the court's August 2016 Order granting Elite's July 2016 Motion to Compel.  (Exhibit N ¶¶ 11, 13).

33.     On January 3, 2018, the Legacy Defendants filed a notice of appeal with the North Dakota Supreme Court, seeking to overturn the trial court's denial of the Legacy Defendants' motions to vacate the March 2017 Judgment.

34.     In or around September 2018, upon information and belief, the Legacy Defendants and Elite agreed to settle the Elite Suit and dismiss the appeal pending before the North Dakota Supreme Court, which was fully briefed at the time.  The Legacy Defendants allege they agreed to pay Elite $575,000 to settle the Elite Suit.  (Exhibit B ¶ 32).

## B. Legacy Suit

35.     On April 8, 2019, upon information and belief, the Legacy Defendants filed their complaint against the Bredahl Defendants, Hankey, and Hankey Law, PLLC ("Hankey Law" and together with Hankey, "Hankey Parties") in the Legacy Suit and served the Bredahl Defendants with the Legacy Complaint.

36.     In the Legacy Suit, the Legacy Defendants allege they engaged the Bredahl Defendants to represent them in the Elite Suit and the Bredahl Defendants "did essentially nothing despite receiving payment" from the Legacy Defendants for their services. (Exhibit B ¶ 13).

37.     The Legacy Defendants allege the Bredahl Defendants "were negligent in failing to interpose an answer" in the Elite Suit, "failing to pursue any discovery, and in failing to respond to discovery requests." (Exhibit B ¶ 15).

38.     The Legacy Defendants further allege the Bredahl Defendants failed to notify the Legacy Defendants of Elite's July 2016 Motion to Compel discovery responses or the court's August 2016 Order compelling the Legacy Defendants to respond to Elite's discovery requests. (Exhibit B ¶¶ 16-18).

39.     In the Legacy Suit, the Legacy Defendants allege Bredahl advised the Legacy Defendants "there was no reason for them to appear at the [March 2017] trial" in the Elite Suit, "concocted false affidavits . . . asserting false facts to the court in an effort to obtain [a] continuance" of the trial, failed to obtain a continuance, "the trial was not continued," and after the trial proceeded without the Legacy Defendants, the Bredahl Defendants, or any other representative for the Legacy Defendants, the court entered judgment against the Legacy Defendants for $1,035.538.81. (Exhibit B ¶¶ 19-24).

40.     The Legacy Suit alleges negligence, breach of fiduciary duty, and misconduct under N.D.C.C. § 27-13-08 against the Bredahl Defendants and the Hankey Parties. (Exhibit B ¶¶ 26-44).

41.     In Count I of the Legacy Complaint, for negligence, the Legacy Defendants allege the Bredahl Defendants and the Hankey Parties "were negligent in a number of areas including, but not limited to:"

> (a) failing to submit an answer on behalf of [the Legacy Defendants]; (b) failing to submit discovery; (c) failing to submit timely responses to discovery; (d) failing to respond to motions, and failing to notify [the Legacy Defendants] of their failure to respond to motions; (e) failing to make appropriate motions for summary judgment; (f) failing to appear for trial; (g) preparing false affidavits both for [Bredahl] as well as for [W. Engkjer] to sign; (h) failing to timely inform [the Legacy Defendants] if [Bredahl] could not or did not desire to continue representing them, they would need to obtain new counsel; (i) failing to adequately prepare for trial of the Elite [Suit]; (j) failing to disclose all material facts to [the Legacy Defendants] so they could make informed decisions and protect their rights; (k) advising [the Legacy Defendants] not to show up for trial; (l) failing to identify exhibits or witnesses for trial; (m) failing to obtain a continuance for [the Legacy Defendants] of the trial of [the Elite Suit] on March 13, 2017, or to obtain alternate counsel, who could obtain such an extension, or to timely advise [the Legacy Defendants] that such an extension could not be obtained, and recommend that [the Legacy Defendants] attend to defend themselves at the trial of the [Elite Suit]; [and] (n) routinely utilizing erroneous excuses, such as concocting medical excuses for failure to do work, or to properly and timely respond.

(Exhibit B ¶ 29).

42.     The Legacy Defendants allege "[b]ut for [the Bredahl Defendants' and the Hankey Parties'] negligence, Elite would not have obtained a judgment against" the Legacy Defendants for $1,035,538.81. (Exhibit B ¶¶ 30-31).

43.     As relief for their negligence cause of action, the Legacy Defendants seek "legal damages well in excess of $745,000.00", which includes (a) "attorney's fees of more than $170,000 to contest and appeal the court's default judgment" in the Elite Suit and (b) $575,000,

the amount the Legacy Defendants allege they ultimately paid Elite to settle the Elite Suit. (Exhibit B ¶¶ 32-33).

44. In Count II of the Legacy Complaint, the Legacy Defendants allege breach of fiduciary duty against the Bredahl Defendants and the Hankey Parties. (Exhibit B ¶¶ 34-40). The Legacy Defendants allege the Bredahl Defendants and the Hankey Parties breached their fiduciary duty to the Legacy Defendants "by engaging in the negligent activity" described in Count I of the Legacy Complaint. (*Id.* ¶ 35).

45. As relief for their breach of fiduciary duty cause of action, the Legacy Defendants seek: (a) "disgorge[ment] [of] all of the attorney's fees paid to" the Bredahl Defendants and the Hankey Parties; (b) reimbursement "for the additional legal work necessary to attempt to mitigate the damages caused by [the Bredahl Defendants' and the Hankey Parties'] negligence", including "reimbursement for their subsequent representation by Ballard Spahr" in the appeal of the judgment entered in the Elite Suit; and (c) attorneys' fees and expenses in the Legacy Suit. (Exhibit B ¶¶ 36-40).

46. In Count III of the Legacy Complaint, the Legacy Defendants allege violations of N.D.C.C. § 27-13-08 against the Bredahl Defendants and the Hankey Parties. (Exhibit B ¶¶ 41-44). The Legacy Defendants allege (a) the Bredahl Defendants' and the Hankey Parties' "actions constitute deceit or collusion, or consent to conceit or collusion with intent to deceive a court or any other party" and (b) the actions of the Bredahl Defendants "show that they received money from [the Legacy Defendants] and did not do anything in response." (*Id.* ¶¶ 42-43).

47. As relief for Count III in the Legacy Suit, the Legacy Defendants seek "treble civil damages" pursuant to N.D.C.C. § 27-13-08. (Exhibit B ¶ 44).

4834-5128-3107.2

48.     On May 2, 2019, upon information and belief, the Bredahl Defendants filed their answer to the Legacy Complaint in the Legacy Suit.

49.     A jury trial in the Legacy Suit, upon information and belief, is scheduled for July 2020.

## II.  The Policy

### A.  2017 Application

50.     On July 20, 2017, Bredahl executed an application ("2017 Application") on behalf of the Bredahl Firm for the Policy.

51.     In the 2017 Application, Bredahl answered "No" to the question: "Are you or any member of the firm aware of or do you or any member of the firm have knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against any current or former attorney in the firm or its predecessors, regardless of the merit of such claim that has not already been reported to ALPS?"

52.     On the Individual Attorney Supplement to the 2017 Application Bredahl executed on July 20, 2017, Bredahl answered "No" to the following question:  "Are you aware of or do you have knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against you, regardless of the merit of such claim?"

53.     On the Individual Attorney Supplements to the 2017 Application executed separately on July 20, 2017 by Nicole L. Bredahl and E. Jane Sundby, the other two individual attorneys insured under the Policy, Mmes. Bredahl and Sundby each answered "No" to the question:  "Are you aware of or do you have knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against you, regardless of the merit of such claim?"

54.     The Bredahl Defendants submitted the 2017 Application to ALPS on or around October 2, 2017.

## B.  Acceptance and Increase in Limits of Liability

55.     By correspondence dated October 9, 2017, after ALPS's review of the 2017 Application, ALPS provided the Bredahl Firm with a quotation for the Policy, which included, *inter alia*, information regarding premiums, limits of liability, and other provisions of the Policy.

56.     The professional liability insurance policy issued by ALPS to the Bredahl Firm immediately prior to the Policy—Lawyers Professional Liability Insurance Policy No. ALPS20836 issued by ALPS to the Bredahl Firm for the policy period October 1, 2016 to October 1, 2017 ("2016-2017 Policy")—provided limits of liability of $250,000 each claim and $500,000 in aggregate, subject to a $10,000 each claim deductible.

57.     By correspondence dated October 24, 2017, in conjunction with the 2017 Application, the Bredahl Firm requested an increase in the each claim and aggregate limits of liability for the Policy.

58.     ALPS, in reliance on the 2017 Application, agreed to the Bredahl Firm's request and, by correspondence dated October 25, 2017, provided the Bredahl Firm with a revised quotation for the Policy.  The revised quotation included, *inter alia*, information regarding premiums, increased limits of liability, and other provisions of the Policy.

59.     On October 25, 2017, Bredahl executed an acceptance page ("2017 Acceptance") on behalf of the Bredahl Firm for the Policy and faxed the 2017 Acceptance to ALPS.

60.     In the 2017 Acceptance, (a) the Bredahl Firm selected the $500,000 per claim and $1,000,000 in aggregate limits of liability for the Policy, which were a $500,000 increase,

respectively, from the 2016-2017 Policy's per claim and aggregate limits of liability, and (b) Bredahl, "acting as an authorized representative on behalf of [the Bredahl Firm]," represented and assured ALPS "there exists no changes to the answers and information set forth in the [2017 Application], including all supplements and attachments thereto."

## C.  The Policy

61.     ALPS issued the Policy to the Bredahl Firm for the policy period October 1, 2017 to October 1, 2018.  (Exhibit A, Declarations Items 1 and 3).  The Policy provides limits of liability of $500,000 each claim and $1,000,000 in aggregate.  (*Id*., Declarations Item 4).

62.     The Policy's Loss Inclusion Date and the Retroactive Coverage Date applicable to Bredahl—and all other individuals insured under the Policy—is October 1, 2016.  (Exhibit A, Declarations Item 3).

63.     Bredahl is listed as an individual attorney insured under the Policy.  (Exhibit A, Declarations Item 2).

64.     The Policy provides legal professional liability insurance on a claims made and reported basis.  (Exhibit A, Insuring Agreements § 1.1).

65.     The Policy's insuring agreement states, in relevant part:

Subject to the Limit of Liability, exclusions, conditions and other terms of this Policy, the Company agrees to pay on behalf of the Insured all sums (in excess of the Deductible amount) that the Insured becomes legally obligated to pay as Damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that:

1.1.1  the Claim arises from an act, error, omission or Personal Injury that happened on or after the Loss Inclusion Date and the Retroactive Coverage Date set forth in Items 2 and 3 of the Declarations, and that the Claim arises from or is in connection with:

(a)     an act, error or omission in Professional Services that were or should have been rendered by the Insured, or

(b)    a Personal Injury arising out of the Professional Services of the Insured;

1.1.2    at the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the act, error, omission or Personal Injury might be the basis of a Claim.

\* \* \*

1.2.1 . . . The Company shall not have a duty to defend or pay such expenses as to any Claim not covered under this Policy, and shall have the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims.

(Exhibit A, Insuring Agreements §§ 1.1-1.2.1) (emphasis in original).

66.    "Damages" is defined in the Policy as "any monetary award by way of judgment or final arbitration, or any settlement"; the Policy specifically excludes from the definition of "Damages":

2.6.1    punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, regardless against whom the same is levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

2.6.2    awards deemed uninsurable by law;

2.6.3    injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

2.6.4    restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured; or

2.6.5    any injury or damage to, destruction of, loss of, or loss of use of any funds or property.

(Exhibit A, Definitions § 2.6).

4834-5128-3107.2

67.     The Policy does not apply to "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny act, error, omission or Personal Injury that occurred prior to the Effective Date of this Policy, if . . . [p]rior to the Effective Date of this Policy, any Insured gave or should have given, to any insurer, notice of a Claim or potential Claim arising from the act, error, omission, or Personal Injury, or from any act, error, omission, or Personal Injury in Related Professional Services."  (Exhibit A, Exclusions § 3.1.5(c)) (emphasis in original).

68.     The Policy does not apply to "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dispute over fees or costs, or any Claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held by an Insured[.]"  (Exhibit A, Exclusions § 3.1.9) (emphasis in original).

### III.  Notice to ALPS and ALPS's Coverage Position

69.     In late January 2018, ALPS first received notice from the Legacy Defendants' counsel of a potential claim ("Claim") against the Bredahl Defendants arising from the Bredahl Defendants' representation of the Legacy Defendants in the Elite Suit.

70.     The Bredahl Defendants failed to cooperate or respond to ALPS's repeated requests for information regarding the Claim following the January 2018 notice.

71.     On April 8, 2019, upon information and belief, the Legacy Defendants filed and served the Bredahl Defendants with their complaint in the Legacy Suit.  (Exhibit B).

72.     By correspondence dated August 20, 2019, over four months after the Legacy Defendants served the Bredahl Defendants with the Legacy Complaint, the Bredahl Defendants first provided ALPS with notice of the Legacy Suit and a copy of the Legacy Complaint.

73.     By correspondence dated September 4, 2019, ALPS agreed to provide the Bredahl Defendants with a defense against the Legacy Suit under the Policy subject to a complete

15

reservation of ALPS's rights to deny coverage and reimbursement of defense costs, and ALPS has provided such defense.

## FIRST CAUSE OF ACTION

### (For a Declaration the Policy Does Not Afford Coverage to the Bredahl Defendants for the Legacy Suit – Against all Defendants)

74.     ALPS incorporates and realleges paragraphs 1 through 73 as if fully set forth herein.

75.     The Policy potentially provides coverage for claims only if "at the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the act, error, omission or Personal Injury might be the basis of a Claim[.]"     (Exhibit A, Insuring Agreements § 1.1-1.1.2).

76.     The Policy specifically excludes coverage for:

ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny act, error, omission or Personal Injury that occurred prior to the [October 1, 2017] Effective Date of this Policy, if . . . [p]rior to the [October 1, 2017] Effective Date of this Policy, any Insured gave or should have given, to any insurer, notice of a Claim or potential Claim arising from the act, error, omission, or Personal Injury, or from any act, error, omission, or Personal Injury in Related Professional Services[.]

(Exhibit A, Exclusions § 3.1.5(c)) (emphasis in original).

77.     The following occurred prior to the Policy's October 1, 2017 effective date:

a.     On March 3, 2016, the court in the Elite Suit scheduled a two-day trial to begin March 13, 2017.  Bredahl was served with notice of the trial setting. (Exhibit D).

b.     On July 14, 2016, Elite filed a motion to compel the Legacy Defendants to respond to discovery requests Elite had served the Legacy Defendants on or around December 23, 2015.  (Exhibit E).  Elite served a copy of the July 2016 Motion to Compel on Bredahl.  (*Id.*).  Defendants did not respond to the July 2016 Motion to Compel.  (Exhibit F ¶¶ 4-5).


acts, errors, or omissions that form the basis of the Legacy Suit, until January 2018, after inception of the Policy.

79.     Coverage under the Policy is limited to claims arising from an act, error, or omission that happened on or after the Loss Inclusion Date and Retroactive Coverage Date of October 1, 2016.  (Exhibit A, Insuring Agreements § 1.1 and Declarations Items 2 and 3).

80.     The failure to respond to discovery in the Elite Suit, which resulted in Elite's July 2016 Motion to Compel and the court's August 2016 Order barring the Legacy Defendants from presenting any evidence at trial not disclosed in response to Elite's discovery requests, occurred prior to October 1, 2016.  (Exhibit F; Exhibit N ¶¶ 11, 13).

81.     Although Bredahl's failure to appear at trial in the Elite Suit occurred in March 2017—after the Policy's October 1, 2016 Loss Inclusion and Retroactive Coverage Date applicable to Bredahl—the March 2017 Judgment following the trial was the unavoidable result of the exclusion of evidence *before* the Policy's Loss Inclusion and Retroactive Coverage Dates; as stated by the court in the Elite Suit, "even if [the Legacy Defendants] had appeared at trial, they were barred from submitting evidence" by the August 2016 Order granting Elite's July 2016 Motion to Compel.  (Exhibit N ¶ 13).

82.     The Legacy Suit is outside the coverage afforded by the Policy because the Legacy Suit arises entirely from alleged acts, errors, or omission by the Bredahl Defendants prior to the October 1, 2016 Loss Inclusion Date and Retroactive Coverage Date applicable to Bredahl.

83.     The Policy does not afford coverage for the Legacy Suit to the extent the relief sought in the Legacy Suit does not constitute "Damages" as defined in the Policy.  (Exhibit A, Insuring Agreements § 1.1 & Definitions § 2.6).

84.     The Policy specifically excludes from the definition of "Damages":

2.6.1   punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, regardless against whom the same is levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

2.6.2   awards deemed uninsurable by law;

2.6.3   injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

2.6.4   restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured; or

2.6.5   any injury or damage to, destruction of, loss of, or loss of use of any funds or property.

(Exhibit A, Definitions § 2.6).

85.     In the Legacy Suit, the Legacy Defendants seek, *inter alia*, disgorgement of the attorneys' fees they paid the Bredahl Defendants to defend the Legacy Defendants in the Elite Suit, treble civil damages for the Bredahl Defendants' violation of N.D.C.C. § 27-13-08, and the Legacy Defendants' attorneys' fees in the Legacy Suit.  (Exhibit B ¶¶ 36, 40, 44).

86.     The multiple and exemplary damages, fines, sanctions, penalties, or citations the Legacy Defendants seek in the Legacy Suit—including, but not limited to, statutory penalties for violations of N.D.C.C. § 27-13-08, attorneys' fees, costs of suit, and other civil penalties—are not "Damages" within the Policy's coverage.  (Exhibit A, Definitions § 2.6.1; Exhibit B ¶¶ 40, 44).

87.     The Legacy Defendants' demand for disgorgement of the attorneys' fees they paid the Bredahl Defendants to defend the Legacy Defendants in the Elite Suit does not seek "Damages" within the Policy's coverage because the Legacy Defendants seek "restitution,

19

reduction, disgorgement or set-off of . . . fees, costs, consideration or expenses paid to or charged by an Insured."  (Exhibit A, Definitions § 2.6.4; Exhibit B ¶ 36).

88.     The Policy does not afford coverage for the Legacy Suit to the extent any exclusions in the Policy apply to exclude coverage.  (Exhibit A, Exclusions § 3).

89.     The Policy specifically excludes coverage for "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dispute over fees or costs, or any claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held by an Insured."  (Exhibit A, Exclusions § 3.1.9) (emphasis in original).

90.     In the Legacy Suit, the Legacy Defendants seek, *inter alia*, disgorgement of the attorneys' fees they paid the Bredahl Defendants to defend Legacy Defendants in the Elite Suit. (Exhibit B ¶ 36).

91.     The Legacy Suit is outside the coverage afforded by the Policy because it involves a dispute over fees and expenses and seeks the return, reimbursement, or disgorgement of fees, costs, or funds held by the Bredahl Defendants.   (Exhibit A, Exclusions § 3.1.9; Exhibit B ¶ 36).

92.     An actual controversy exists between ALPS and Defendants regarding whether the Policy affords coverage for the Legacy Suit.

93.     Because the Legacy Suit is outside the coverage afforded by the Policy, ALPS is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring the Policy does not afford coverage for the Legacy Suit and ALPS has no duty to defend or indemnify the Bredahl Defendants with respect to the Legacy Suit.

## SECOND CAUSE OF ACTION

### (Reimbursement of Defense Expenses – Against the Bredahl Defendants)

94.     ALPS incorporates and realleges paragraphs 1 through 93 as if fully set forth herein.

95.     The Policy states ALPS has no duty to defend or pay defense expenses for "any Claim not covered" and has "the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims." (Exhibit A, Insuring Agreements § 1.2.1).

96.     ALPS is defending the Bredahl Defendants against the Legacy Suit under the Policy subject to a complete reservation of rights, including the right to seek recovery from Bredahl, the Bredahl Firm, or any insured under the Policy of all amounts paid in defense of non-covered aspects of the Legacy Suit.

97.     For the reasons described above in Paragraphs 74 through 91, the Legacy Suit is outside the coverage afforded by the Policy.

98.     ALPS is entitled to judgment in its favor and against the Bredahl Defendants for the amount of attorneys' fees and costs paid to defend the Bredahl Defendants with respect to the Legacy Suit because the Legacy Suit is not covered under the Policy.

WHEREFORE, ALPS prays that judgment be entered in its favor and against Defendants as follows:

1.     Declaring the Policy does not afford coverage to the Bredahl Defendants for the Legacy Suit;

2.     Declaring ALPS has no duty to defend or indemnify the Bredahl Defendants under the Policy with respect to the Legacy Suit;

3.     Awarding damages in favor of ALPS and against the Bredahl Defendants in the amount of the attorneys' fees and costs paid to defend the Bredahl Defendants with respect to the Legacy Suit; and

4.     Awarding ALPS such additional relief as shall be deemed appropriate in the circumstances, together with its costs and expenses.

Dated:  September 10, 2019
        /s/ *J. Crisman Palmer*
        J. Crisman Palmer
        Gunderson Palmer Nelson Ashmore LLP
        506 Sixth Street
        Post Office Box 8045
        Rapid City, SD  57709
        Telephone: (605) 342-1078
        Email: cpalmer@gpna.com

        *Attorneys for Plaintiff ALPS Property &*
        *Casualty Insurance Company*